IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BENJAMIN PAEZ, | **4:20CV3108** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| M. J. NUTSCH, NSP Troop E. Badge # 321, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Benjamin Paez ("Paez"), a state prisoner who appears pro se, alleges Defendant, M.J. Nutsch ("Nutsch"), a Nebraska State Patrol Trooper who is sued in his individual capacity only, conducted an unlawful search of Plaintiff's vehicle and person, and unlawfully seized Plaintiff's cell phone from inside the vehicle, during a traffic stop on May 27, 2020.

Liberally construing the allegations of Paez's Amended Complaint, this is a 42 U.S.C. § 1983 action in which it is claimed that Nutsch violated Paez's Fourth and Fourteenth Amendment rights by (1) searching Paez's vehicle without a search warrant, (2) seizing Paez's cell phone without a search warrant, (3) searching Paez's person without a search warrant or pursuant to an arrest, and (4) searching Paez's person in an unreasonable manner by conducting a roadside strip search. See Memorandum and Order entered June 28, 2021 (Filing 18), on initial review of the Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

This matter is now before the court on Nutsch's motion for summary judgment (Filing 38), in which he claims qualified immunity. Upon careful review, the court finds the motion should be granted with respect to the warrantless search of Paez's vehicle and warrantless seizure of his cell phone, but should be denied with respect to the warrantless strip search.

## II. SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).

In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party and gives that party "the benefit of all reasonable inferences that can be drawn from the record." *State Nat'l Ins. Co., Inc. v. Washington Int'l Ins. Co.*, 304 F. Supp. 3d 827, 831-32 (D. Neb. 2018) (quoting *Minnesota ex rel. N. Pac Ctr., Inc. v. BNSF Ry. Co.*, 686 F.3d 567, 571 (8th Cir. 2012)). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

"There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (internal quotations and citations omitted). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Smith-Bunge v. Wisconsin Cent., Ltd.,* 946 F.3d 420, 424 (8th Cir. 2019).

The initial burden on a moving party "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) ("The moving party can satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial."); *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (moving party need not produce evidence showing "the absence of a genuine issue of material fact.").

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.,* 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.,* 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042).

## III. QUALIFIED IMMUNITY

Qualified immunity shields officials from civil liability in a 42 U.S.C. § 1983 action when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Morgan v. Robinson*, 920 F.3d 521 (8th Cir. 2019) (quoting *Pierson v. California*, 555 U.S. 223, 231 (2009)). Qualified immunity involves a two-step analysis: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* at 523 (quoting *Nord v. Walsh Cty.*, 757 F.3d 734, 738 (8th Cir. 2014)). Unless both of these questions are answered affirmatively, a defendant is entitled to qualified immunity. Moreover, courts are permitted to exercise their sound discretion in determining which of the two prongs should be addressed first. *Id.* (quoting *Nord*, 757 F.3d at 738-39).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The clearly established right should not be defined at a high level of generality, but instead must be particularized to the facts of the case. *Id.* There does not need to be a case directly on point, but existing precedent "must have placed the statutory or constitutional question beyond debate." *Id.* at 524 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Qualified immunity gives government officials "breathing room" to make reasonable but mistaken judgments, and protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam)).

"Qualified immunity is an affirmative defense for which the defendant carries the burden of proof. The plaintiff, however, must demonstrate that the law is clearly established." *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002); *see Creighton v. Anderson*, 922 F.2d 443, 447 (8th Cir. 1990) ("Once the plaintiff has demonstrated that the law governing the plaintiffs' rights was clearly established at the time of the defendant's acts, the defendant has the burden of proof with respect to all other elements of the qualified immunity defense.").

## IV. SUMMARY JUDGMENT PROCEDURE

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

This court's local rules further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of

4

material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(1)(b)(1) (underlining omitted).

In this case, Paez has failed to make any response to Nutsch's motion for summary judgment. "Failure to file an opposing brief is not considered a confession of a motion but precludes the opposing party from contesting the moving party's statement of facts." NECivR 7.1(b)(1)(C). Consequently, Nutsch's statement of material facts (Filing 39, pp. 2-9, ¶¶ 1-61), which finds support in the record, will be deemed admitted for purposes of deciding the motion for summary judgment. Although Paez is proceeding pro se, he is bound by and must comply with all local and federal procedural rules. NEGenR 1.3(g).

## V. UNDISPUTED MATERIAL FACTS

The court finds there is no genuine dispute as to the following material facts which are properly referenced in separate numbered paragraphs in Nutsch's brief in support of his motion for summary judgment:

1. On May 27, 2020, M.J. Nutsch was on duty with the Nebraska State Patrol, in full uniform, displaying the badge of office and operating a marked Nebraska State Patrol unit in Dawes County, Nebraska. (Nutsch Aff. [Filing 39-1] p. 1, ¶ 1)

2. He was operating on a normal shift that began at 7:30 a.m., patrolling north on Nebraska Highway 71. (Nutsch Aff. p. 1, ¶ 2)

3. While patrolling northbound, Nutsch observed a blue 2006 Chevrolet Impala travelling southbound Highway 71. (Nutsch Aff. p. 1, ¶ 3)

4. The Chevrolet Impala was displaying Nebraska license plate number 21-GF80. (Nutsch Aff. p. 1, ¶ 4)

5. As Nutsch viewed the vehicle, he observed, through his training and experience, the vehicle to be speeding. (Nutsch Aff. p. 2, ¶ 5)

5

6. He activated his patrol unit's RADAR and determined the vehicle to be traveling 84 miles per hour in a 65 mph speed limit zone. (Nutsch Aff. p. 2, ¶ 6)

7. Nutsch caught up with the Chevrolet Impala and conducted a traffic stop for speed violations near mile-marker 121 at approximately 1:13 p.m. (Nutsch Aff. p. 2, ¶ 7)

8. He exited his patrol vehicle and approached the Chevrolet Impala on the driver's side. (Nutsch Aff. p. 2, ¶ 8; Ex. A [Filing 40 attachment[1]])

9. While approaching the vehicle, Nutsch observed the vehicle to be occupied by a male driver, a front-seat female passenger, and a back-seat female passenger. (Nutsch Aff. p. 2, ¶ 9; Ex. A)

10. During this time, the male driver had rolled down his driver's side window and had begun speaking to Nutsch about his concern for his back-seat female passenger's health. (Nutsch Aff. p. 2, ¶ 10; Ex. A)

11. The male driver indicated that the back seat female passenger was his mother and that she was sick. (Nutsch Aff. p. 2, ¶ 11; Ex. A)

12. While speaking to the male driver, Nutsch observed his behavior to be distraught. (Nutsch Aff. p. 2, ¶ 12)

13. Upon reaching the vehicle, Nutsch viewed multiple air fresheners throughout the passenger area. (Nutsch Aff. p. 2, ¶ 13)

14. He requested the male driver to exit the vehicle due to the alleged health issue of the driver's mother, as well as the driver's behavior. (Nutsch Aff. p. 2, ¶ 14)

15. Once outside the vehicle, Nutsch continued talking to the male driver and conducted a brief weapons frisk. (Nutsch Aff. p. 2, ¶ 15; Ex. A)

16. Following the frisk, Nutsch made contact with the driver's mother. (Nutsch Aff. p. 3, ¶ 16)

---

[1] Exhibit A to the Affidavit of M. J. Nutsch is a DVD containing video from the dashboard camera of his patrol unit.

17. He observed the driver's mother to be alert and functioning. (Nutsch Aff. p. 3, ¶ 17)

18. During Nutsch's conversation with this passenger, she indicated that she was having complications due to medication she was taking and that the medication made her nauseous. (Nutsch Aff. p. 3, ¶ 18)

19. Nutsch asked her if she required medical attention or if she believed her life to be in danger and she indicated that she would be fine. (Nutsch Aff. p. 3, ¶ 19; Ex. A)

20. While talking to the passengers, Nutsch was able to identify them and determine that they did not have any outstanding warrants at this time. (Nutsch Aff. p. 3, ¶ 20)

21. He requested the male driver to sit with him in the patrol unit. (Nutsch Aff. p. 3, ¶ 21; Ex. A)

22. Nutsch identified the male driver to be Benjamin Paez, Date of Birth – July 2, 1979. (Nutsch Aff. p. 3, ¶ 22)

23. While talking with Paez, Nutsch observed a back passenger door open and the Paez's mother lean out of the vehicle. (Nutsch Aff. p. 3, ¶ 23)

24. Nutsch went to check on the safety of Paez's mother and when he approached the vehicle, he could detect an odor of marijuana emitting from the open door of the vehicle. (Nutsch Aff. p. 3, ¶ 24; Ex. A)

25. Nutsch returned to his vehicle and confirmed that an odor of marijuana to be present on Paez as well. (Nutsch Aff. p. 3, ¶ 25; Ex. A)

26. Due to the odor present in the vehicle and on Paez's person, Nutsch began a probable cause search, starting with Paez himself. (Nutsch Aff. p. 3, ¶ 26; Ex. A)

27. Paez was not happy with this search and indicated that he was not under the influence of a drug. (Nutsch Aff. p. 3, ¶ 27)

28. Paez then accused Nutsch of lying about the odor in order to complete a search. (Nutsch Aff. p. 4, ¶ 28; Ex. A)

29. Nutsch secured Paez in the secure area of the patrol unit as he continued the search of the other two passengers. (Nutsch Aff. p. 4, ¶ 29, Ex. A)

30. As he talked to the front-seat female passenger, Paez's mother made an admission that there was a little roach on the floor of the car in the front passenger area from when Paez smoked in the car the other day. (Nutsch Aff. p. 4, ¶ 30; Ex. A)

31. While Nutsch conducted his search of the other two passengers, Paez made a free admission that there was a marijuana cigarette on the driver's side floor near his mother and claimed that he "totally forgot." (Nutsch Aff. p. 4, ¶ 31; Ex. A)

32. Nutsch went back to the patrol unit to talk to Paez and Paez made the same statement to him again. (Nutsch Aff. p. 4, ¶ 32)

33. At approximately 1:32 p.m., Trooper Jared Dusatko with the Nebraska State Patrol arrived on scene to help Nutsch conduct a search of the vehicle. (Nutsch Aff. p. 4, ¶ 33)

34. As Nutsch searched the driver's area of the vehicle, a partially burnt marijuana cigarette was located on the driver's floor. (Nutsch Aff. p. 4, ¶ 34)

35. Nutsch viewed the contents of the cigarette and, in his training and experience, recognized this to be marijuana. (Nutsch Aff. p. 4, ¶ 35)

36. As Nutsch searched the center console area of the vehicle, Nutsch observed a black LG cell phone to be plugged in and resting on the console. (Nutsch Aff. p. 4, ¶ 36)

37. Nutsch observed the phone screen to be on and unlocked, with a text screen displayed in plain view. (Nutsch Aff. p. 4, ¶ 37)

38. Nutsch recognized, through his training and experience, the texts to be organizing an illegal drug transaction. (Nutsch Aff. p. 5, ¶ 38)

39. That text message screen read:

| | |
|---|---|
| *Unknown sender:* | ey |
| *Paez:* | Whuy |
| *Unknown sender:* | u still lookin |
| *Paez:* | Yeah |
| *Unknown sender:* | How much |
| *Paez:* | I'm at Crawford right now going to get my dog I'll be back in like half an hour to an hour. |
| *Unknown sender:* | okay |
| *Paez:* | It's not all cut is it I heard that's 2hut u had byt if it's good hells yeH. |

(Nutsch Aff, p. 5, ¶ 39)

40. Trooper Dusatko continued the search of the vehicle while Nutsch began speaking again with Paez. (Nutsch Aff. p. 5, ¶ 40)

41. During a brief interview with Paez, Paez indicated that he was working for the WING Drug Task Force. (Nutsch Aff. p. 5, ¶ 41; Ex. A)

42. Paez indicated that he was trying to "work an angle" to help himself out before he was to appear in court for sentencing on another case. (Nutsch Aff. p. 5, ¶ 42; Ex. A)

43. Paez told Nutsch that he knew of a female that he could buy methamphetamine from and that he had been in contact with her for WING. (Nutsch Aff. p. 5, ¶ 43; Ex. A)

44. Nutsch asked Paez which Investigator he was working with at WING but he was unable to say. (Nutsch Aff. p. 5, ¶ 44; Ex. A)

45. Paez then told Nutsch to contact Investigator Dodge, claiming Dodge could confirm Paez's work with WING. (Nutsch Aff. p. 5, ¶ 45; Ex. A)

46. Nutsch asked Paez why he was going to court on another case. (Nutsch Aff. p. 5, ¶ 46; Ex. A)

47. Paez advised that it was for a charge of Possession of Methamphetamine with Intent to Distribute as he had been caught with a half-ounce a few months before. (Nutsch Aff. p. 5, ¶ 46; Ex. A)

48. Nutsch asked Paez if he had signed any paperwork to work with investigators but he said that he couldn't remember. (Nutsch Aff. p. 6, ¶ 47)

49. Nutsch called Investigator Dodge and advised Dodge of the conversation he had with Paez. Investigator Dodge advised that Paez was not working with WING. (Nutsch Aff. p. 6, ¶ 48; Ex. A)

50. Following this conversation, and due to Paez's statements regarding the texts Nutsch seized the cell phone as evidence due to the fact that it contained information regarding the illegal sale of a controlled substance. (Nutsch Aff. p. 6, ¶ 49)

51. When confronted with the information, Paez gave affirmation of this. (Nutsch Aff. p. 6, ¶ 50)

52. When asked for further details about the person contacted for the illegal transaction of a controlled substance, Paez began withholding information. (Nutsch Aff. p. 6, ¶ 51)

53. Nutsch then seized the phone to uncover further evidence of the manufacture, distribution, delivery, dispensary, possession or possession with intent to distribute a controlled substance. (Nutsch Aff. p. 6, ¶ 52)

54. During the phone call with Investigator Dodge, Nutsch was also informed that Paez was known to keep items of contraband inside items of clothing and under his genitals. (Nutsch Aff. p. 6, ¶ 53)

55. As a result, Nutsch informed Paez of this and told him "The investigator I just talked to told me that you like to put things down your pants." (Nutsch Aff. p. 6, ¶ 54; Ex. A)

56. Paez replied by laughing out loud and stating, "I don't have boxers on" then asking, "Do you want me to open them?" (Nutsch Aff. p. 6, ¶ 54; Ex. A)

57. I replied "Yep" and Paez lowered his pants exposing himself.[2] (Nutsch Aff. p. 6, ¶ 54; Ex. A)

58. No items of contraband were located during this search which lasted approximately 10 seconds. (Nutsch Aff. p. 7, ¶ 55; Ex. A)

59. Nutsch issued Paez citations for Speeding 16-20 mph over the speed limit and for Possession of Marijuana one ounce or less. Nutsch then released Paez from the scene. (Nutsch Aff. p. 7, ¶ 56)

60. Nutsch then travelled to the Alliance Police Department and placed all evidence into the Alliance Temporary Evidence Lockers. (Nutsch Aff. p. 7, ¶ 57)

61. Nutsch later obtained a search warrant for Paez's cellphone and sent the cell phone to Lincoln, Nebraska for a complete search of the device. (Nutsch Aff. p. 7, ¶ 58)

## VI. ANALYSIS

The Fourth Amendment, which is made applicable to states by the Fourteenth Amendment, guarantees that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …." U.S. Const. amend. IV. In establishing a violation of his Fourth Amendment rights under 42 U.S.C. § 1983, a plaintiff must show that a search or seizure occurred and that it was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). A Fourth Amendment "seizure" requires an intentional act by a governmental actor. *McCoy v. City of Monticello*, 342 F.3d 842, 847 (8th Cir. 2003).

"Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Vore,* 743 F.3d 1175, 1179 (8th Cir. 2014) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)). In the Eighth Circuit, a plaintiff has the burden of proof in a

---

[2] Nutsch states in his affidavit that Paez "voluntarily" lowered his pants. (Nutsch Aff. p. 6, ¶ 54) This is a legal conclusion rather than a statement of fact. However, Nutsch does not argue that Paez consented to the search of his person; Nutsch instead contends there was probable cause for the search.

§ 1983 action claiming a Fourth Amendment violation for a warrantless search. *Der v. Connolly*, 666 F.3d 1120, 1127 (8th Cir. 2012). However, the defendant has the burden of producing evidence that an exception to the warrant requirement applies.

> As the Seventh Circuit explained, "[e]ven if a presumption of unreasonableness arises from the fact of a warrantless search [or entry], that does not serve in a civil case to shift 'the burden of proof in the sense of the risk of nonpersuasion.'" *Valance* [*v. Wisel,* 110 F.3d 1269, 1279 (7th Cir. 1997)] (quoting Fed. R. Evid. 301). Instead, such "presumption merely serves to impose on the defendant 'the burden of going forward with evidence to meet or rebut the presumption.'" *Id.* (quoting Fed. R. Evid. 301). A defendant may satisfy this burden of production by "produc[ing] evidence of consent or of some other recognized exception to the warrant requirement." *Id.* at 1278. "Yet once the defendant has done so, 'the ultimate risk of nonpersuasion must remain squarely on the plaintiff in accordance with established principles governing civil trials.'" *Id.* (quoting *Ruggiero* [*v. Krzeminski,* 928 F.2d 558, 563 (2d Cir. 1991)]).

*Id.* at 1128. *See also Paez v. Nutsch*, No. 4:20CV3108, 2021 WL 2652456, at *4 (D. Neb. June 28, 2021) ("A plaintiff claiming that her Fourth Amendment rights were violated by a warrantless [search or] entry need not plead facts affirmatively showing the absence of any exception to the warrant requirement, because the absence of such an exception is not a part of the plaintiff's prima facie case.") (quoting *Payne v. Galie*, 574 F. App'x 26, 27 (2d Cir. 2014)).

### A. Traffic Stop and Search of Vehicle

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). "[T]he Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has a 'particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Kansas v. Glover*, 140 S.Ct. 1183, 1187 (2020) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Paez does not challenge the lawfulness of the

traffic stop and, in fact, admits in his Amended Complaint that he was "travelling at a high rate of speed to get [his] mom to medical attention" before he was pulled over by Nutsch. (Filing 17, p. 2).

"Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'" *Rodriguez*, 575 U.S. at 354 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). "[T]he Fourth Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention. *Id.* (citing *Arizona v. Johnson*, 555 U.S. 323, 327-28 (2009); *Illinois v. Caballes*, 543 U.S. 405, 406 (2005)). However, a traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a … ticket." *Id.* at 354-55 (quoting *Caballes*, 543 U.S., at 407). The seizure remains lawful only "so long as [unrelated] inquiries do not measurably extend the duration of the stop." *Id.* at 355 (quoting *Johnson*, 555 U.S., at 333).

Here, the video evidence (Exhibit A) shows the traffic stop lasted less than 70 minutes, which was not an unreasonable length of time under the circumstances. Nutsch first had a brief discussion with Paez, who seemed distraught. Nutsch observed several air fresheners inside the vehicle. Nutsch requested Paez to exit the vehicle. "[O]nce a motor vehicle has been legally detained for a traffic violation, the police officers may order the driver out of the vehicle without violating the 4th Amendment proscription of unreasonable searches and seizures." *Arizona v. Johnson*, 555 U.S. 323, 331 (2009). Nutsch then conducted a protective pat-down search for weapons. "To justify a patdown of the driver or a passenger during a traffic stop, … the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). Paez, however, does not challenge this search, which yielded nothing.

Following the weapons frisk, Nutsch had a conversation with Paez's mother, who was sitting in the backseat of Paez's vehicle and reportedly was sick. After determining that Paez's mother did not require medical assistance, Nutsch asked Paez to sit with him in the patrol car. When Nutsch saw Paez's mother open a back passenger door and lean out of the stopped vehicle, he went to check on her safety. While doing so, he detected a faint odor of marijuana emitting from inside the vehicle. Upon returning to the patrol car, he also smelled marijuana on Paez's person and determined there was probable cause to search the vehicle.

The Eighth Circuit has "repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception" and declined "to distinguish between a faint smell and a strong smell [of marijuana] in determining whether the marijuana odor is enough to prolong a stop, …." *United States v. Shumaker*, 21 F.4th 1007, 1017-18 (8th Cir. 2021) (citations omitted). The automobile exception permits the warrantless search of a vehicle if police "had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began." *U.S. v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014). *See United States v. Brown*, No. 4:09CR3052, 2009 WL 10679481, at *3 (D. Neb. Oct. 5, 2009) (officers' detection of the smell of burnt marijuana emanating from vehicle provided probable cause to search the vehicle in its entirety) (citing cases), *aff'd*, 634 F.3d 435 (8th Cir. 2011). *See also State v. Perry*, 874 N.W.2d 36, 45-46 (Neb. 2016) (Nebraska's decriminalization of possession of one ounce or less of marijuana did not affect probable cause analysis). Here, the unrefuted evidence supports Nutsch's probable cause determination.[3]

### B. Seizure of Paez's Cell Phone

"It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). "Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate." *Id.* "The plain view doctrine authorizes the seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *Illinois v. Andreas*, 463 U.S. 765, 771 (1983). "First, not only must the item be in plain view, but its incriminating nature must also be immediately

---

[3] As previously stated, the defendant in a § 1983 action has the burden of producing evidence that an exception to the warrant requirement applies. *See* Fed. R. Evid. 301 ("In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally.").

apparent…. Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." *Horton v. California*, 496 U.S. 128, 136-37 (1990).

The undisputed facts show that Nutsch, along with Trooper Dustako, were both searching Paez's vehicle when they observed the unlocked and open cell phone sitting in plain view next to the driver's seat. Nutsch saw a text message which he interpreted as arranging a meeting for an illegal drug transaction. Nutsch returned to his patrol car to discuss the text message with Paez. Paez tried explaining to Nutsch that the conversation was part of his ongoing activity with the WING Drug Task Force, and stated he was working with Investigator Dodge. Nutsch was able to reach Investigator Dodge by phone, who advised Nutsch that Paez was not working as an informant. Nutsch decided to seize the cellphone at that time "due to the fact that it contained information regarding the illegal sale of a controlled substance." (Nutsch Aff. p. 6, ¶ 49). The seizure was lawful under the plain view doctrine.

### C. Search of Paez's Person

After detecting the odor of marijuana in the vehicle and on Paez's person, Nutsch searched Paez's pants pockets but found no incriminating evidence. (Nutsch Aff. p. 3, ¶ 26; Ex. A) Paez does not challenge the lawfulness of this search.

Later, after speaking with Investigator Dodge and learning that Paez was known to hide drugs inside his clothing and under his genitals, Nutsch directed Paez to lower his pants. (Nutsch Aff. p. 6, ¶ 54; Ex. A). Nutsch contends this strip search "was supported by probable cause" (Filing 39 at 22), but "[a] warrantless search, irrespective of the existence of probable cause, is per se unreasonable except for a few well-delineated exceptions." *United States v. Wilson*, 524 F.2d 595, 600 (8th Cir. 1975) (Heaney, C.J., dissenting). *See Coolidge*, 403 U.S. at 454-55 ("Thus the most basic constitutional rule in this area is that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.") (cleaned up). Nutsch does not claim that any recognized exception to the warrant requirement is applicable here, such as a search incident to an arrest. Indeed, Nutsch specifically claims in his motion for summary judgment that he "did not violate Paez's Fourth Amendment rights because

the search of Paez's body was made after probable cause was established that Paez often hides contraband in his genital area." (Filing 38, p. 1).

Nutsch further states he "had reasonable suspicion to believe that Paez was hiding contraband on his person after Nutsch spoke to Investigator Dodge." (Filing 39 at 21). While reasonable suspicion will justify a protective pat-down search for weapons during an investigatory stop, *see Arizona v. Johnson*, 555 U.S. 323, 330-32 (2009), it will not justify a search for evidence of criminal activities. *See United States v. Hanlon,* 401 F.3d 926, 930 (8th Cir.2005) ("Because safety is the sole justification for a pat-down search for weapons, only searches 'reasonably designed to discover concealed weapons' are permissible.").

In this case, the search of Paez's person proceeded from Nutsch frisking him for weapons, reaching into his pants pockets in search of more evidence of drug activities, and, finally, conducting a visual strip search. Based on the pleadings, only the final search is at issue here. Because this search was per se unreasonable without a warrant, there is no need to consider at this juncture whether it was unreasonable for other reasons, such as being overly intrusive, humiliating, or abusive. *See, e.g., United States v. Williams*, 477 F.3d 974, 975 (8th Cir. 2007). ("In determining reasonableness, courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.").

"[I]n cases where there is a legitimate question whether an exception to the warrant requirement exists, it cannot be said that a warrantless search violates clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 535 n. 12 (1985). This is not such a case, though, because Nutsch has not claimed that an exception applies. He has only asserted—contrary to clearly established law—that the warrantless search was justified by probable cause and reasonable suspicion. Any reasonable officer in Nutsch's position would have known that he could not conduct a roadside strip search without a warrant unless some exception applied, and he does not claim an exception. Consequently, Nutsch's defense of qualified immunity fails with respect to Paez's claims involving the strip search. See *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982) ("Qualified immunity is an affirmative defense for which the government official bears the burden of proof.").

16

## VII. CONCLUSION

The court finds there is no genuine dispute as to any material fact and Nutsch is entitled to judgment as a matter of law on Paez's claims that his constitutional rights were violated when Nutsch searched Paez's vehicle and seized his cell phone, because the "automobile" and "plain view" exceptions to the warrant requirement are applicable. It remains to be determined whether Nutsch may be held liable for conducting a roadside strip search of Paez's person without a warrant.

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (Filing 38) is granted in part and denied in part, as follows:

1.  Plaintiff's claims that the search of his vehicle and the seizure of his cell phone violated his constitutional rights are dismissed with prejudice.

2.  In all other respects, the motion for summary judgment is denied.

IT IS FURTHER ORDERED on the court's own motion that the following language is substituted for Paragraph 5 ("Pretrial Conference") of the Order Setting Schedule for Progression of Case (Filing 24), and the Clerk of the Court is directed to reset the pro se case management deadline accordingly:

5.      Pretrial Conference.

a.      Defense counsel will have the primary responsibility for drafting the Order on Final Pretrial Conference, pursuant to the format and requirements set out in NECivR 16.2(a)(2). The plaintiff will be responsible for cooperating in the preparation and signing of the final version of the Order. The Order should be submitted to the plaintiff and to any other parties by **July 11, 2022**. The plaintiff shall provide additions and/or proposed deletions to Defense counsel by **July 25, 2022.** Defense counsel shall submit the Proposed Order on Final Pretrial Conference to the court by no later than **August 8, 2022**. If a party proposes an addition or deletion which is not agreed to by all the other parties, that fact should be noted in the text of the document. The Proposed Order on Final Pretrial Conference must be signed by all pro se parties and by counsel for all represented parties.

      b.    The Final Pretrial Conference will be held before the Magistrate Judge on **August 16, 2022, at 11:00 a.m**. Prior to the pretrial conference, all items as directed in NECivR 16.2 and full preparation shall have been completed so that trial may begin at any time following the Pretrial Conference.

      c.    If a plaintiff is held in an institution, the pretrial conference will be by telephone. In that case, Defense counsel shall contact the plaintiff's institution in advance and arrange to initiate and place the conference call.

Dated this 12th day of May, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

18